Lisa D. PIKE

v.

OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE

CIVIL ACTION NO. 14–CV–511

United States District Court,
M.D. Louisiana.

Signed September 22, 2015

J. Arthur Smith, III, Adrienne Danielle Rachel, Smith Law Firm, Baton Rouge, LA, for Lisa D. Pike.

Renee Culotta, Elizabeth Harper Emmett, Mary Elizabeth Jeanfreau, Frilot, LLC, New Orleans, LA, for Office of Alcohol and Tobacco Control of the Louisiana Department of Revenue.

### RULING AND ORDER

JUDGE JOHN W. deGRAVELLES, UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF LOUISIANA

Before the Court is Defendant's Partial Motion to Dismiss and for Other Relief. (Doc. 4). Plaintiff opposes the motion. (Doc. 10). Oral argument is not necessary.

After carefully considering the law, facts, and arguments of the parties, Defendant's Partial Motion to Dismiss and for Other Relief is granted in part and denied in part. Defendant's motion is granted in that (1) the Court lacks jurisdiction over Plaintiff's state law termination claim based on disability discrimination for back pay, reinstatement at the same or similar pay and benefits, or, alternatively, reinstatement with front pay and restoration of full seniority rights and benefits, because she did not first pursue this claim with the Civil Service Commission, and (2) Plaintiff's change in job duties claim is a discrete discriminatory act that is time-barred because it occurred more than 300-day prior to her EEOC charge. Defendant's motion is denied without prejudice in that *res judicata* is premature at the dismissal stage, and Defendant may re-urge *res judicata* at a later stage of these proceedings. In all other respects Defendant's motion is denied.

## I. Relevant Factual and Procedural Background

### A. Introduction

This case arises out of the Office of Alcohol and Tobacco Control of the Louisiana Department of Revenue's ("Defendant" or "ATC") alleged violations of the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL"). Lisa D. Pike ("Plaintiff") brought suit pursuant to 42 U.S.C. § 12101 *et seq.* claiming disability discrimination and retaliation under federal law, and La.Rev.Stat. § 23:323 claiming disability discrimination, disability-based harassment, and retaliation under state law. Defendant is seeking partial dismissal of Plaintiff's claims as well as a stay.

### B. Plaintiff's Allegations

Plaintiff alleges that she was employed by the Louisiana Department of Revenue for approximately sixteen (16) years.

(Plaintiff's Petition for Damages, Doc. 1–2, p. 5 ¶ 7). Plaintiff claims she was transferred to the Louisiana Office of Alcohol and Tobacco Control effective January 18, 2010. (Doc. 1–2, p. 5 ¶ 7). Prior to the events described below, Plaintiff asserts she had an unblemished work record and at all times was a faithful, diligent, and conscientious employee to Defendant. (Doc. 1–2, p. 6 ¶ 8).

Plaintiff asserts that she was a disabled individual within the meaning of the Americans with Disability Act ("ADA"), 42 U.S.C. § 1202(1)(A), because she suffered from adjustment disorder with mixed anxiety and depressed mood. (Doc. 1–2, p. 6 ¶ 9). Plaintiff claims that her health conditions substantially limited her major life activities of thinking, concentrating, and working. (Doc. 1–2, p. 6 ¶ 10). Plaintiff also alleges that she was a qualified individual as defined by the ADA, 42 U.S.C. § 12111(8), as she successfully performed her duties as an administrative assistant for one year and nine months. (Doc. 1–2, p. 6 ¶ 11).

Plaintiff claims that Defendant had knowledge of her disability and her limitations. (Doc. 1–2, p. 6 ¶ 12). Allegedly, Plaintiff made repeated requests for reasonable accommodations to Defendant. (Doc. 1–2, p. 6 ¶ 13). Plaintiff contends that Defendant "refused to participate in an interactive process required by the ADA to determine the appropriateness of the accommodations which had been requested by [her]." (Doc. 1–2, p. 6 ¶ 14). Plaintiff contends that Defendant's refusal to provide the requested reasonable accommodations caused her condition to worsen. (Doc. 1–2, p. 6 ¶ 16).

Plaintiff also alleges that she was harassed on the basis of her disability and subjected to a hostile work environment in retaliation for requesting reasonable ac-

commodations, which were set out in the ADA, 42 U.S.C. § 12203(a). (Doc. 1–2, p. 7 ¶ 17). Plaintiff filed two separate charges with the Equal Employment Opportunity Commission ("EEOC") against Defendant, claiming that Defendant violated the ADA. (Doc. 1–2, p. 7 ¶ 18). The first charge of discrimination was filed on August 27, 2010,[1] and the second charge was filed on March 2, 2012.[2] (Doc. 1–2, p. 7 ¶ 18).

Plaintiff claims that Troy Hebert, the Commissioner of the ATC, "chose to initiate a series of disability-based harassment incidents designed to effectively force her to resign from her position or cast her in a false light for the purpose of terminating [her] because of her disability." (Doc. 1–2, p. 7 ¶ 19). Allegedly, since filing the original discrimination claim with the EEOC on August 27, 2010, Defendant continued to violate the ADA by retaliating against Plaintiff, and Troy Hebert intensified his harassment of her. (Doc. 1–2, p. 7 ¶ 20). Plaintiff contends that the alleged retaliation and harassment caused her symptoms of anxiety and depression to worsen and "thus deliberately set [her] up to make mistakes while doing her job." *Id.*

Plaintiff contends that on August 16, 2010, Plaintiff was approved to leave pursuant to the Family Medical Leave Act (FMLA) by her treating physician, Dr. Mark Mouton, because of work related stress, anxiety, and insomnia. (Doc. 1–2, p. 7 ¶ 21.A). Plaintiff claims that one week later, on August 23, 2010, she returned to work at ATC as an Administrative Assistant 6 under the supervision of interim Commissioner, Mr. Brant Thompson. (Doc. 1–2, p. 7 ¶ 21.B). Plaintiff asserts that Commissioner Brant Thompson gave her a "solid sustained performance" evalu-

---

1. Charge no.: 27A–2010–00048.

2. Charge no.: 461–2012–00800.

ation on September 1, 2010. (Doc. 1–2, p. 7 ¶ 21.C).

Allegedly, on November 24, 2010, Troy Hebert was appointed ATC Commissioner and was shortly thereafter made aware of Plaintiff's disability conditions. (Doc. 1–2, p. 8 ¶ 21.D). Plaintiff asserts that Defendant made arbitrary changes in her work duties that were outside the normal duties usually performed by an Administrative Assistant 6 on January 18, 2011. (Doc. 12, p. 8 ¶ 21.E). These alleged work duties "include but [are] not limited to having [P]laintiff update applications for permitting, working in the Enforcement Section, performing menial tasks and other tasks outside of the responsibility of an Administrative Assistant 6." (Doc. 1–2, p. 8 ¶ 21.E).

Plaintiff asserts that on June 1, 2011, "Defendant instituted a bogus 'layoff plan' to target and effectively get rid of her and other certain employees." (Doc. 1–2, p. 8 ¶ 21.F). Plaintiff claims that as a result, she took a demotion to Administrative 3 position, which cost her "substantial amounts of salary each month." (Doc. 1–2, p. 8 ¶ 21.G).

Plaintiff alleges that on July 13, 2011, Commissioner Hebert transmitted a letter to her requiring that she provide weekly medical statements about her medical condition. (Doc. 1–2, p. 8 ¶ 21.H). Plaintiff asserts that on July 13, 2011, her doctor issued a work excuse that she was under his care from July 11 to July 19, and could return to work after. (Doc. 1–2, p. 8 ¶ 21.-I). Further, on July 19, Plaintiff's doctor issued a second doctor's excuse, which stated that she "was again under his care, and that he was unable to provide her employer with weekly updates." (Doc. 1–2, p. 8 ¶ 21.J). Plaintiff claims that on July 21 she faxed a written note from her doctor to Commissioner Hebert. (Doc. 1–2, p. 8 ¶ 21.K).

Plaintiff claims that on July 29, 2011, Commissioner Hebert "transmitted a letter to [her] which placed her on leave without pay effective July 21, 2011, because [she] and/or her doctor did not provide weekly statements verifying the cause of her absence from work." (Doc. 1–2, p. 8 ¶ 21.L). On August 10, 2011, Commissioner Hebert transmitted another letter to Plaintiff that again placed her on leave without pay effective August 1, 2011, because she and/or her doctor did not provide weekly statements verifying the cause of her absence from work. (Doc. 1–2, p. 8 ¶ 21.M).

Plaintiff asserts that on August 12, 2011, she emailed weekly updated statements to ATC, and that on August 15, 2011, she emailed Commissioner Hebert with statements from her doctor. (Doc. 1–2, p. 8 ¶¶ 21.N–O). Allegedly, on August 25, 2011, Commissioner Hebert issued Plaintiff a letter explaining that a three day suspension for insubordination was being considered because Plaintiff and/or her doctor did not or would not submit weekly updates on her medical condition. (Doc. 1–2, p. 8 ¶ 21.P).

Plaintiff contends that on September 19, 2011, Commissioner suspended her for three days effective October 3, 2011, to October 5, 2011. (Doc. 1–2, p. 8 ¶ 21.Q). Then, on October 10, 2011, Plaintiff wrote to Commissioner Hebert stating her intention and ability to return to work, as long as significant changes would be made to the work environment, as stated in a second FMLA opinion report issued regarding her medical condition. (Doc. 1–2, p. 8 ¶ 21.R).

Plaintiff alleges that she was terminated by Commissioner Hebert on October 13, 2011. (Doc. 1–2, p. 9 ¶ 21.S). Plaintiff claims that it was entirely "because of her disability even though she was fully capable of performing the essential functions of her position if provided reasonable accommodations." (Doc. 1–2, p. 9 ¶ 21.S).

Plaintiff claims that she received a right to sue notice in regards to her first EEOC charge of discrimination within a few days after April 9, 2014 and that she timely filed this petition within ninety (90) days of receiving the notice. (Doc. 1-2, p. 16 ¶ 23).

Plaintiff asserts that "Defendant's actions constitute unlawful disability discrimination, disability-based harassment and retaliation in violation of the ADA, 42 U.S.C. §§ 12112 and 12203." (Doc. 1-2, p. 16 ¶ 25). Plaintiff also claims that "the series of adverse actions has caused and will continue to cause significant mental and emotional anguish and distress to [her]." (Doc. 1-2, p. 16 ¶ 26).

Additionally, Plaintiff claims that Defendant's conduct constitutes "unlawful disability discrimination, disability-based harassment and retaliation in violation of La.Rev.Stat. § 23:323(A) and La.Rev.Stat. § 23:323(B)(1) and (2)." (Doc. 1-2, p. 17 ¶ 30).

Plaintiff seeks the following remedies:

1. A declaratory judgment finding that Defendant violated the ADA and the LEDL.

2. That Plaintiff be reinstated as an employee of Defendant in the same or similar position with the same or similar pay and benefits to that from which she was wrongfully terminated or be awarded front pay with the restoration of full seniority rights and all other benefits retroactive to the date of discharge;

3. That Plaintiff be awarded all wages, salary, fringe benefits, and other compensation lost as a result of Defendant's alleged unlawful conduct in an amount to be determined by a jury;

4. An order directing Defendant to pay unto Plaintiff compensatory damages as are determined by the jury;

5. That Plaintiff be awarded reasonable attorney's fees, litigation expenses and costs; and,

6. That Plaintiff be awarded other and further relief as the Court and jury deems appropriate.

(Doc. 1-2, pp. 17–18 ¶ 31).

**C. Present Motion**

Defendant now moves for partial dismissal [3] of five of Plaintiff's claims and to stay these proceedings. (Doc. 4, p. 1).

Defendant argues that the following claims made by Plaintiff are "barred by res judicata and/or collateral estoppel" (Doc. 4-1, p. 2): (1) that the ATC discriminated and/or retaliated against her by requiring her to submit weekly certifications from her doctor to justify her need for extended sick leave, (Doc. 1-2, ¶ 21 H–K), (2) that Defendant discriminated and/or retaliated against her by suspending her for three days due to her failure to submit weekly certifications from her doctor to justify her need for extended sick leave, (Doc. 1-2, ¶ 21 L–P), and (3) that Defendant discriminated and/or retaliated against her by instituting a layoff plan that resulted in elimination of her position and reassignment to a position with lower pay, (Doc. 1-2, ¶ 21 F–G). Defendant asserts that these allegations by Plaintiff "have already been presented to and decided by the CSC and Louisiana courts." (Doc. 4-1, p. 10)

---

**3.** Defendant acknowledges that it is "not seeking a full dismissal of [Plaintiff's] lawsuit" and that Plaintiff "has stated a claim for failure to accommodate her disability under the ADA/LEDL for compensatory damages." (Doc. 4-1, p. 1 n. 1). Further, Defendant asserts that it "is not seeking dismissal of [Plaintiff's] federal ADA claims, with the exception of one discrete time-barred act." (Doc. 11, p. 2). Accordingly, the Court need not address arguments raised by Plaintiff concerning these issues.

Further, Defendant asserts that Plaintiff claims (4) that Defendant discriminated and/or retaliated against her by terminating her and that she is due back and front pay, reinstatement, restoration of full seniority rights and other benefits as a result of the termination, (Doc. 1–2 ¶¶ 21(S), 27, 30, 31(b)), "falls under the exclusive jurisdiction of the [Civil Service Commission] ("CSC"), and as such, [Plaintiff] is required to submit her appeal to and contest these issues with the CSC." (Doc 4–1, p. 2). Finally, Defendant contends that Plaintiff's claim that (5) Defendant discriminated and/or retaliated against her by substantially changing her job duties on January 18, 2011, is "time-barred as it is a discrete act which occurred more than 300 days before [Plaintiff] filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC)." (Doc. 4–1, pp. 2–3).

Plaintiff counters each of Defendant's arguments at length.[4] First, Plaintiff contends that "none of [her] claims are barred by res judicata or collateral estoppel." (Doc. 10, p. 15). Plaintiff argues that the alleged three-day suspension is not barred by *res judicata* because she "did not have an opportunity to litigate her disability discrimination claims before the CSC, much less a 'full and fair opportunity' to do so." (Doc. 10, p. 20). Plaintiff contends

that the claim regarding ATC's layoff plan is not barred by res judicata because there is no evidence that the approval of the layoff plan was reviewed by any court. (Doc. 10, P. 20–21).

Next, Plaintiff argues that the LEDL does not require her to exhaust state administrative remedies before seeking relief under the LEDL from this Court. (Doc. 10, p. 5). Plaintiff also contends that the CSC "does not have subject matter jurisdiction over disability discrimination claims." *Id.* Finally, Plaintiff argues that the change of her job duties is not time-barred because it "was the onset of a continuing violation of the ADA by the Defendant." (Doc. 10, p. 27).

In its reply, Defendant asserts that "[t]o the extent [Plaintiff] is claiming she was wrongfully terminated, for whatever reason, she was and is required to submit her removal/termination issue to the original, exclusive jurisdiction of the CSC." (Doc. 11, p. 3). Further, Defendant argues that Plaintiff "did go through the proper CSC procedure to contest her disciplinary action (three-day suspension) and the ATC's layoff plan." (Doc. 11, p. 5). Defendant contends that "the conclusions reached by the CSC and First Circuit Court of Appeal should be binding against [Plaintiff] and

---

4. Indeed, Plaintiff's thirty page memorandum in opposition exceeds the page limitation of the Local Rules of this Court. Even so, because of the disposition of the *res judicata* arguments explained below, there has been no unfair advantage to Plaintiff. Thus, because there is no unfair advantage from this violation, the Court exercises its discretion to not strike the brief and simply reminds Plaintiff of the Local Rules of this Court.

Further, since filing this motion, this Court's Local Rules have changed concerning page limitations. Local Rule 7(g) now provides:

All initial memoranda filed by a party (including briefs, memoranda in support of a

motion, and appeals to District Judges) shall be limited to twenty pages excluding attachments. Subsequent memoranda (including memoranda in response or in opposition), if any, shall not exceed ten pages excluding attachments. The form of the memorandum shall comply with LR10(a). Reply and surreply memoranda, if permitted, shall be limited to five pages. Leave of Court must be obtained to file memoranda in excess of the limit above.

As such, subsequent filings must conform to the updated Local Rules. However, either party is free to request leave of Court if additional pages are required.

should not be re-litigated in this forum." *Id..*

Finally, Defendant "argues only one discrete act," is time-barred. (Doc. 11, p. 7). Defendant asserts that Plaintiff's "allegation of a substantial change in job duties on January 18, 2011, is time-barred because it occurred more than 300 days before [Plaintiff] filed her change of discrimination with the EEOC." *Id.* Defendant further contend that Plaintiff cannot rely on the "continuing violation" argument in light of *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *Id.*

## II. Procedural Issues

Defendant has submitted eleven exhibits in support of its motion and arguments that *res judicata* applies. (Doc. 4, Exhibits A–K). · Plaintiff has submitted three exhibits to support her opposition. (Doc. 10, Exhibits A–C). The parties request for the Court to take judicial notice of these exhibits. As explained above, Defendant seeks to dismiss three of Plaintiff's claims arguing that they are barred by *res judicata.* However, as an initial procedural matter, the Court must ·determine whether Defendant properly brought its *res judicata* argument under Rule 12(b)(6).

### A. *Res Judicata*

■ *Res judicata* is an affirmative defense. Fed.R.Civ.P. 8(c). In the Fifth Circuit, "[g]enerally a *res judicata* contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 n. 2 (5th Cir.2005); *see also Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir.2007); *but see* Wright & Miller, Federal Practice and Procedure: Civil 3rd § 1357 at 721, 728 ("... affirmative defenses that have been considered on a motion to dismiss under Rule 12(b)(6) include ... the barring effect of res judicata and related preclusion prin-

ciples", citing numerous decisions). The Fifth Circuit has further noted that *"[r]es judicata* is an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.,* 115 Fed.Appx. 662, 664 n. 1 (5th Cir.2004) (unpublished) (citing *Moch v. E. Baton Rouge Parish Sch. Bd.,* 548 F.2d 594, 596 n. 3 (5th Cir.1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986) (noting that Rule 12(b)(6) only applies to affirmative defenses that appear on the face of the plaintiff's complaint)).

■ However, "[d]ismissal under Rule 12(b)(6) on res judicata grounds is appropriate when the elements of *res judicata* are apparent on the face of the pleadings." *Murry v. Gen. Servs. Admin.,* 553 Fed. Appx. 362, 364 (5th Cir.2014) (citing *Kan. Reinsurance Co. v. Mortg. Corp. of Tex.,* 20 F.3d 1362, 1366 (5th Cir.1994)); *see also Dean v. Miss. Bd. of Bar Admissions,* 394 Fed.Appx. 172, 175 (5th Cir.2010). Even so,· as the Eastern District has recently explained, "[c]ourts in this circuit are hesitant to dispose of cases at the dismissal stage on grounds of *res judicata." J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distribs., LLC,* No. CIV.A. 14–2580, 2015 WL 2383841, at *3 (E.D.La. May 19, 2015) (citing *Test Masters,* 428 F.3d at 570 n. 2). Further, the Southern District of Texas has held that "unless the complaint itself sets forth the facts necessary to determine that *res judicata* precludes adjudication, summary judgment is the proper standard for determining whether a claim should be dismissed based on res judicata." *Grynberg v. BP P.L.C.,*· 855 F.Supp.2d 625, 648 (S.D.Tex.2012) *aff'd,* 527 Fed.Appx. 278 (5th Cir.2013) (citing

*Hall v. Hodgkins*, 305 Fed.Appx. 224, 227 (5th Cir.2008)).

■ Thus, for Defendant's *res judicata* arguments to be properly before the Court, it must be determined whether the exception to the general rule is met—that is, whether *res judicata* is apparent on the face of Plaintiff's pleading.

Here, the Court finds that no exception to the general rule is met. It is not readily apparent on the face of Plaintiff's pleadings that *res judicata* should apply. Plaintiff's allegations concern the alleged discrimination and harassment on the part of Defendant. Further, Plaintiff's petition also asserts that her ADA claims were submitted to the EEOC and that she filed suit after receiving her right to sue letter. These facts do not concern the alleged proceedings that Defendant argues occurred. From Plaintiff's allegations, it does not appear that *res judicata* is applicable at this stage of the proceedings.

■ While the Court agrees with Defendant that judicial notice is appropriate on a motion to dismiss,[5] the Court finds that the general rule that prohibits *res judicata* from being brought on a motion to dismiss is a threshold issue to be addressed first because the Court must determine whether a motion to dismiss is properly before the Court.[6] *See Quinn v. LM Ins. Co.,* CIV.A. 5:07–CV–217DC, 2009 WL 884770, at *2 (S.D.Miss. Mar. 30, 2009) ("The defendant's [*res judicata*] motion [to dismiss] is ... not properly before the Court and shall be denied."); *Bernard v. Lafayette Consol. Govt,* CIV.A. 13–2339, 2013 WL 6662513, at *7–8 (W.D.La. Dec. 17, 2013), *appeal dismissed* (Apr. 15, 2014) (denying dismissal on the grounds of *res judicata* because no exception to the general rule was met). If it were appropriate for this Court to take judicial notice of exhibits that would establish the basis of a *res judicata* motion to dismiss, the general rule would serve little purpose. Any defendant could simply ask a court to take judicial notice of documents to circumvent the general rule.

This limitation on judicial notice is supported by the general rule's exception that "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds is appropriate when the elements of res judicata are *apparent on the face of the pleadings.*" *Murry,* 553 Fed.Appx. at 364 (emphasis added). This exception allows a defendant to move for a motion to dismiss based on *res judicata* from a plaintiff's pleadings rather than pleading the affirmative defense as required by Fed.R.Civ.P. 8(c).

---

5. Indeed, this Court has recently stated that "the Fifth Circuit has explained that 'it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *Davis v. Toyota Motor Sales,* CIV.A. 14–683, 2015 WL 3456656, at *2 (M.D.La. May 29, 2015) (citing *Norris,* 500 F.3d at 461 n. 9 (5th Cir.2007); *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir.2011) (holding that it is appropriate to take judicial notice under Rule 12(b)(6) of relevant publicly-available documents and transcripts)).

6. There is an apparent tension between the general rule prohibiting *res judicata* from being raised on a motion to dismiss and the rule allowing a court to take judicial notice of matters of public record on a motion to dismiss. *See Aubrey v. Barlin,* A–10–CA–076–SS, 2011 WL 675068, at *11 (W.D.Tex. Feb. 16, 2011) (noting the tension between the two rules but declining to address how the rules interact for lack of subject matter jurisdiction). However, the Court is not barred from taking judicial notice of Defendant's exhibits at a later stage. The general rule merely states that *res judicata* is premature on a motion to dismiss. *See American Realty Trust,* 115 Fed.Appx. at 664 n. 1 (5th Cir. 2004) (declining to address premature *res judicata* argument); *China Nat. Bldg. Material Inv. Co. v. BNK Int'l, LLC,* No. A–14–CA–701–SS, 2015 WL 363275, at *9 (W.D.Tex. Jan. 27, 2015) ("Res judicata is an affirmative defense ... assertion of claim preclusion at the Rule 12 stage is premature.").

Thus, at this time, because the Court finds the general rule prohibiting *res judicata* on a motion to dismiss is a threshold issue, the Court declines to take judicial notice of either party's exhibits. As such, the Court finds that Defendant's *res judicata* arguments are premature. Because Defendant's *res judicata* arguments are premature, they are denied without prejudice and Defendant may re-urge *res judicata* at a later stage of these proceedings.[7] The Court makes no finding as to the merits of the arguments from either party. Further, the Court makes no finding as to whether it is appropriate to take judicial notice of any of the exhibits.

Thus, there are only two issues left before the Court on this motion: (1) whether Plaintiff's state law removal/termination claim based on disability discrimination is properly before the Court, and (2) whether Plaintiff's job duty change claim is time-barred.

## III. Motion to Dismiss Standards

### A. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014), the Supreme Court has explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R.Civ.P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ]; *Twombly,* 555 [550] U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed.R.Civ.P. 8(a)(2), remains that the defendant be given ade-

---

**7.** The Court notes that Defendant has requested that its motion be converted to a summary judgment if the Court found that judicial notice of the submitted exhibits was not appropriate. (Doc. 4–1, p. 6 n. 3). How-ever, because Defendant's motion on this issue is denied without prejudice, the Court declines to convert Defendant's motion to a summary judgment.

quate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* 555 [550] U.S. at 556, 127 S.Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10–00177, 2011 WL 938785, at *3 (W.D.La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion for dismissal:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff ... To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

### B. Rule 12(b)(1) Standard

A 12(b)(1) motion to dismiss is analyzed under the same rubric as a 12(b)(6) motion to dismiss. The Court must accept all well pleaded facts in the Complaint as true and view them in the light most favorable to the plaintiff. While a 12(b)(6) motion is determined solely on the face of the pleadings, for purposes of a 12(b)(1) motion, the Court may look at evidence in the record. *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 441 (5th Cir.2008)). A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears that the plaintiff "cannot prove any set of facts" in support of the plaintiff's claims to relief. *Wagstaff v. United States Department of Education,* 509 F.3d 661, 663 (5th Cir. 2007). In ascertaining the likelihood of whether the plaintiff can "prove any set of facts" in support of his/her claims for relief, the Court may evaluate the Complaint, supplemented by undisputed facts, and the Court's resolution of disputed facts. *Ramming v. U.S.,* 281 F.3d 158, 161 (5th Cir.2001) ("Lack of subject matter may be found in any of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Furthermore, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

### IV. Discussion

#### A. Plaintiff's State Law Removal/Termination Claim Based on Disability Discrimination

Here, the Court must determine whether Plaintiff's state law claim that she was terminated based on disability discrimination is properly before the Court.

Defendant argues that Plaintiff's complaint regarding her termination should be dismissed and/or stayed pending CSC consideration because the CSC has exclusive jurisdiction over removal actions. (Doc. 4–1, P. 13–16). Defendant argues that Plaintiff's claim for "recovery of 'past, present

and future wage loss,' 'loss earning capacity,' reinstatement and 'front pay with the restoration of full seniority rights and all other benefits retroactive to the date of discharge,' all [stem] from her termination of employment from the ATC." (Doc. 4–1, p. 15). Defendant argues that Article X, Section 12(A) of the Louisiana Constitution grants the exclusive power and authority to hear and decide all removal and disciplinary cases. (Doc. 4–1, P. 7). Defendant asserts that "the district courts cannot have concurrent jurisdiction over these matters because the orderly fashion of resolving employer-employee related disputes would be disrupted if employees were allowed to forum shop between the CSC and the courts." (Doc. 4–1, P. 7) (citing *Crockett v. Roberts*, 2010 WL 1254656, at *3 (E.D.La. March 25, 2010).

Plaintiff argues that there is no requirement that Pike pursue a civil service remedy before seeking relief on her state law claims under the LEDL in this court. (Doc. 10, P. 5). Plaintiff contends that the statute contains no language that would suggest the exhaustion of civil service remedies is required before filing suit in state or federal court. (Doc. 10, P. 5). Plaintiff asserts that "[t]he only exhaustion requirement in the LEDL is contained in La.Rev. Stat. § 23:303(c) which requires pre-suit written notice to the intended defendant and a good faith effort to resolve the dispute before initiating court action." (Doc. 10, P. 5). Plaintiff claims that she has met this requirement by filing her claim with the EEOC. (Doc. 10, P. 5). Plaintiff argues that her claims under the LEDL does not require exhaustion of civil service remedies and therefore should not be dismissed or stayed pending civil service consideration. (Doc. 10, P. 5–6).

Further, Plaintiff asserts that the CSC does not have exclusive jurisdiction over disability discrimination claims. (Doc. 10, P. 5–6). Plaintiff relies on *Louisiana Department of Agriculture and Forestry v. Sumrall*, 98–1587 (La.3/2/99), 728 So.2d 1254, and argues that the CSC does not have subject-matter jurisdiction over this claim. Plaintiff contends that *Sumrall* clearly shows that the CSC only has exclusive jurisdiction over the · discrimination claims set out in Art X, Section 8 of the Louisiana Constitution, which include political, race, religion, and sex discrimination. (Doc. 10, ·P. 6). Plaintiff claims that the Louisiana Supreme Court has made clear that the jurisdiction of the CSC is not exclusive with respect to claims arising under the Louisiana Bill of Rights and state statutes creating assertable rights to be free from discrimination. (Doc. 10, P. 7).

Article X, Section 8(B) of the Louisiana Constitution provides, in pertinent part, that "No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race." *Id.* Further Article X, Section 12(A) provides, in pertinent part, that "State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases[.]" *Id.*

This Court has previously addressed the issue of the jurisdiction of the CSC in *Stevenson v. Williamson*, 547 F.Supp.2d 544, 557 (M.D.La.2008), *aff'd*, 324 Fed. Appx. 422 (5th Cir.2009) (unpublished). In that case, pertinent to the case at bar, Stevenson was also a classified civil service employee who alleged that she was "suspended with pay, denied a merit wage increase, and demoted from her position as director because of her refusal to remain quiet regarding the allegedly illegal activities within the [Department of Social Services]." *Id.* at 548. Stevenson brought a state law claim of reprisal under La. R.S. 23:967, Louisiana's Whistleblower Statute, claiming damages for humiliation, embarrassment, loss of reputation, opportunity for advancement/promotion, lost wages

and benefits, mental anguish and emotional distress. *Id.* That case was initially filed in state court and was removed to this Court. *Id.* The defendants, similarly, argued that this Court lacked subject matter jurisdiction over Stevenson's state law claims because the CSC has exclusive jurisdiction. *Id.* at 556. This Court explained that:

> Because Article X, § 12(a) grants the Civil Service Commission the exclusive power and authority to hear and decide all removal and disciplinary cases, Louisiana district courts do not have jurisdiction over such employment related disputes as reinstatement, back pay and merit increases asserted by classified civil service employees against the state. *See e.g., Goldsby v. State, Dept. of Corrections,* 861 So.2d 236, 238 (La.App. 1 Cir. 2003); see also, *Barenis v. Gerace,* 357 So.2d 892 (La.App. 1 Cir.1978) (holding that the Civil Service Commission has exclusive jurisdiction over the issue of whether a state employee was entitled to a promotion).

*Stevenson,* 547 F.Supp.2d at 557.

This Court further explained that:

> The Civil Service Commission however has no authority to provide general tort damages. (*Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La.App. 4 Cir.2004). *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La.App. 1 Cir.1991) *writ denied,* 596 So.2d 196 (La.1992)). Plaintiff in the present case claims damages for humiliation, embarrassment, loss of reputation, opportunity for advancement/promotion, lost wages and benefits, mental anguish and emotional distress. Therefore, the Nineteenth Judicial District Court, Parish of East Baton Rouge had subject matter jurisdiction over the general tort claims at the time of removal. As a consequence, jurisdiction is present in this court over the general tort claims based upon Louisiana R.S. 23:967.

*Id.*

Here, Defendant is seeking to dismiss plaintiff claims that "she is due back and front pay, reinstatement, restoration of full seniority rights and other benefits as a result of the termination." (Doc 4–1, p. 2). These claims, as Defendant argues, stem from Plaintiff's termination from the ATC. Plaintiff does not address this Court's previous holding in *Stevenson.* However, Plaintiff argues that her claim falls under the LEDL, and such a claim has not been addressed by jurisprudence. Plaintiff claims that *Sumrall* stands for the position that the CSC does not have jurisdiction over disability claims. *Stevenson* did not address whether termination claims based on disability discrimination must be submitted to the CSC, thus the Court addresses Plaintiff's claims beginning with *Sumrall.*

In *Sumrall,* the Louisiana Supreme Court addressed the rule making authority the CSC has under Article X, Section 10 of the Louisiana Constitution. The Commission "promulgated the rules ... which defined 'discrimination' in broader terms than Article X, Section 8(B)[.]" *Sumrall,* 728 So.2d at 1257. For example, the Commission defined "Discrimination" as "consideration of religious or political beliefs, sex, race, or any other non-merit factors." *Id.* at 1260. The Louisiana Supreme Court had to "interpret Article X, Section 8(B), Section 12(A), and Section 10(A)(1) and (3) to determine whether the rules of the Commission challenged herein are constitutional." *Id.* at 1258.

Pertinent to this case, the Louisiana Supreme Court explained that "[Article X,] Section 8(B) prohibits discrimination against a classified employee on the basis

of his political or religious beliefs, sex, or race. Any classified employee who alleges that he has been discriminated against in one of these four ways has a right to an administrative appeal to the Commission." *Id.* at 1259. That court further explained that "Section 12 of Article X places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the Commission, with the attendant power to appoint referees to hear and decide cases." *Sumrall,* 728 So.2d at 1259. However, that court explained:

> [Section 12 of Article X] is silent on discrimination cases. Thus, Sections 8 and 12 must be read together in order to assess the Commission's quasi-judicial authority. Constitutional provisions should be read together so that each provision is given their proper force and effect. We have said the "cardinal rule of constitutional and statutory construction" is that "such enactments should be construed, where possible, so as to give force and effect to each provision and to render none nugatory." *Central Louisiana Elec. Co. v. Louisiana Public Service Commission,* 251 La. 532, 205 So.2d 389, 391 (1967) (emphasis added) (citing *Decklar v. Frankenberger,* 30 La. Ann. 410 [ (1878) ]; *Meyers v. Flournoy,* 209 La. 812, 25 So.2d 601 [ (1946) ]; 66 American Jurisprudence 2d 242, verbo Constitutional Law, Sections 66–67; and 16 C.J.S. verbo Constitutional Law ss 22–23, p. 91).

*Id.* In "reading the entirety of Section 8 together with Section 12," the Louisiana Supreme Court explained that "we see the extent of the quasi-judicial power placed with the Commission by the constitution. The constitution limits the Commission's jurisdiction to two categories of claims: (1) discrimination claims provided for in Section 8(B); and (2) removal or disciplinary claims provided for in Sections 12(A) & 8(A)." *Id.* at 1260.

Plaintiff heavily relies on the *Sumrall* court's summary which provided:

> In sum, any classified employee asserting a discrimination claim based upon political or religious beliefs, race or sex, may bring their case to the Commission. Any individual asserting a cause of action based upon a form of discrimination not within the scope of the Commission's quasi-judicial power expressed in Article X, Sections 8 and 12, may not bring his claim to the Commission but has recourse in the district courts. Other laws, state statutes, and provisions of the constitution create assertable individual rights to be free from many forms of discrimination. Plaintiffs seeking protection under any of these laws may take refuge in the district courts of this state.

*Sumrall,* 728 So.2d at 1264.

While this passage appears at first blush to support Plaintiff's argument, the *Sumrall* court was not addressing termination claims directly. Rather, pertinently, that Court was addressing rules promulgated by the CSC that "define[d] 'discrimination' in broader terms than Article X, Section 8(B)." *Id.* at 1257. Plaintiff's claim concerns a termination claim based on a non-enumerated form of discrimination.

Justice Lemmon opined about Plaintiff's particular claim when he subscribed to the *Sumrall* opinion and assigned additional reasons. Justice Lemmon wrote:

> The Commission has original jurisdiction "to hear and decide all removal and disciplinary cases...." La. Const. art. X, § 12. Since most discrimination claims arise in the context of a removal or a discipline case, the Commission will have jurisdiction in such cases to decide the discrimination claim, whatever the grounds. The few remaining dis-

crimination claims (other than those involving removal or discipline) must be filed in the district courts (unless the Legislature proposes a constitutional amendment to expand the Commission's jurisdiction.) Therefore, notwithstanding the Commission's concerns, any undermining of judicial efficiency, and possibility of conflicting decisions on the same or closely related facts caused by the bifurcation of original jurisdiction for discrimination claims should be minimal.

*Id.* at 1264–65.

However, Justice Lemmon's additional reasons were not the opinion of the majority. While the Court finds Justice Lemmon's additional reasons persuasive, they are not binding. *See Stevens v. Chen,* 2011–1486 (La.App. 1 Cir.6/8/12), 2012 WL 2060878, at *6 (unpublished), *writ denied,* 98 So.3d 876 (La.2012) (explaining that language contained in a Louisiana Supreme Court concurrence does not constitute binding authority).

Even so, the Court finds further persuasive authority supporting the position that the CSC has exclusive jurisdiction over termination claims based on disability discrimination from the Western District's analogous case *Johnson v. Louisiana State University Health Science Center,* CIV.A. 09–0691, 2011 WL 3117862 (W.D.La. July 26, 2011). In that case, the plaintiff raised disability discrimination claims, and the defendant argued that "failure to exhaust and/or abandonment of her civil services remedies should bar/preclude her from recovery under her disability discrimination claims pursuant to Louisiana's employment discrimination laws and perhaps federal law." *Id.* at *4. In determining whether the plaintiff had to exhaust civil services remedies, the Western District explained that:

With regard to the [Defendant's] argument that [Plaintiff's] state law claims of disability discrimination are precluded, the Court is "bound to apply [Louisiana] law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.,* 212 F.3d 269, 271–72 (5th Cir.2000). The Louisiana Supreme Court has never ruled on whether a civil service employee must exhaust her remedies before the CSC and obtain a determination that she has been wrongfully terminated before she can pursue a claim of discriminatory discharge in state court. Therefore, the Court must make an "Erie guess" as to how the Louisiana Supreme Court would rule upon the issue based on (1) decisions of the Louisiana Supreme Court in analogous cases, (2) the rationales and analyses underlying Louisiana Supreme Court decisions on related issues, (3) dicta by the Louisiana Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Louisiana courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. *See Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, 199 (5th Cir.2006) (citations omitted).

*Id.* at *5.

In making an "Erie guess," the Western District found "little guidance in Louisiana Supreme Court decisions," but did find "guidance in the [Louisiana] appellate courts." *Id.* That court first turned to the Second Circuit Court of Appeals' decision in *Johnson v. Board of Supervisors of Louisiana State University & Agriculture. & Mechanical College,* 45,105 (La.App. 2 Cir.3/3/10), 32 So.3d 1041.[8] *Id.* That court summarized:

---

8. This appellate court decision that the West- ern District first discussed was plaintiff's pri-

In its analysis, the Second Circuit first noted that, under Article 10 of the Louisiana Constitution, the CSC has been vested with exclusive jurisdiction to hear and decide all removal and disciplinary lawsuits involving civil service employees. [*Johnson*, 32 So.3d] at 1045. "The thrust of the grant of exclusive jurisdiction over employment-related disputes between employers and employees in civil service is to preclude the district court from having concurrent jurisdiction with the CSC over such disputes." *Id.* at 1046 (citations omitted). The "provisions delegating jurisdiction to the CSC over removal and disciplinary actions are to be narrowly construed.... For instance, the CSC has no subject matter jurisdiction over tort cases and cannot award general monetary damages." *Id.* On the other hand, "the CSC's exclusive jurisdiction to hear and decide removal and disciplinary cases cannot be circumvented or defeated by styling a removal or disciplinary matter as a tort suit." *Id.* (citations omitted). After reviewing relevant decisions of other appellate courts, the Second Circuit reconciled the authorities by concluding:

> A claim for damages based on the alleged wrongful removal of a civil service employee cannot be asserted in district court without first successfully appealing the removal before the CSC. Johnson's appeal before the CSC was not successful, and she abandoned the civil service remedies available to her by failing to timely appeal the referee's ruling. As a result, the CSC's ruling is a final judgment on the legality of her removal by E.A. Conway for

or "suit in state court against the Board of Supervisors[.]" *Johnson*, 2011 WL 3117862,

job abandonment. Johnson cannot now avoid the CSC's adverse ruling and circumvent the exclusive jurisdiction of the CSC to review and decide her removal case by alleging in district court a different ground for her removal, namely retaliatory discharge for filing a worker's compensation claim. Notably and inexplicably, Johnson failed to raise this defense before the CSC even though she was represented by counsel. While we are sympathetic to Ms. Johnson's situation, she had the opportunity to appeal her removal before the CSC as provided by La. Const. Art. 10, § 12. Unfortunately for her, the appeal was not successful. It having been determined by the CSC that her removal was proper, the district court lacks jurisdiction to review her removal so as to award damages under La. R.S. 23:1361.

*Id.* at 1049–50.

*Johnson*, 2011 WL 3117862, at *5–6.

Next, the Western District explained that "[i]n reaching [the above] determination, the Second Circuit noted with approval the decision of the Fourth Circuit Court of Appeals" in *Williams v. Orleans Levee District.*, 24 So.3d 307 (La.App. 4 Cir. 2009), *rev'd in part on other grounds*, 2009–2637 (La.4/5/10), 31 So.3d 1048. *Id.* at *6. As summarized by that Court:

> In [*Williams* ], Williams appealed his termination to the CSC, but during the pendency of that proceeding also filed suit in district court alleging the torts of defamation, false imprisonment, and intentional infliction of emotional distress and additional claims of racial discrimination, discriminatory

at *5.

employment practices, civil rights violations, and whistleblower protection. After the CSC issued a final decision upholding Williams' termination as lawful, his former employer filed an exception of res judicata in the district court suit. The trial court denied the exception as to the tort claims but granted the exception as to the remaining claims. On appeal, the Fourth Circuit affirmed the district court because Williams' termination was the central issue in these four claims, and his claims had been reviewed and rejected by the CSC.

*Johnson*, 2011 WL 3117862, at *6.

The Western District then explained:

According to the Second Circuit, "[t]he [Fourth Circuit] opinion makes clear that the authority to review the reasons for a civil service employee's termination and determine whether it was lawful is unambiguously assigned to the CSC pursuant to its exclusive jurisdiction over removal matters." *Id.* Comparing Williams' claims to Johnson's, the Second Circuit stated: "Here, too, the basis for her termination is the central issue in Johnson's retaliatory discharge suit. This issue concerning the reason for Johnson's removal by E.A. Conway is one over which the CSC has been granted exclusive power and authority to hear and decide." *Id.*

*Id.* at *6.

The Western District then turned to *McCain v. City of Lafayette*, 98–1902 (La. App. 3 Cir.5/5/99), 741 So.2d 720, and noted that the Second Circuit found that *McCain* stands "alone in its interpretation of the judicial authority granted the CSC." *Id.* (citing *Johnson*, 32 So.3d at 1048 n. 3). As summarized by the Western District:

In [*McCain* ], McCain's employment with the City was terminated. He first unsuccessfully appealed to the city's civil service board. Then he filed suit in state district court alleging age discrimination. Ruling in favor of the city, the trial court determined that McCain could not for the first time raise his age discrimination claim in district court when the city civil service board had exclusive original subject matter jurisdiction over all removal and disciplinary cases.

On appeal, the Third Circuit recognized that McCain's termination or removal was at issue in his age discrimination suit and that the civil service board should have been able to determine whether age discrimination was the cause of a wrongful removal, but also recognized that the civil service board could not award damages. Expressing concern that a claim for damages might prescribe if a claimant was first required to appeal his removal to the civil service board and then seek further review of an adverse decision before filing a tort suit, the Third Circuit concluded that the civil service board does not have exclusive jurisdiction over cases wherein it has no power to grant the remedy sought, such as tort damages.

*Id.* at **6–7.

After reviewing each of these cases, the Western District held that "[a]fter considering all these decisions, the Court believes that, if faced with the question, the Louisiana Supreme Court would find that [Plaintiff] is precluded from pursuing her state law disability discrimination claims when she failed to raise that issue to the CSC as the basis of her alleged improper removal." *Id.* at *7. Further, that court explained that "[a]lthough the CSC does not have the authority to award damages, its jurisdiction is not conditioned upon that authority. If [Plaintiff] had obtained a favorable determination on her claim of improper removal, she could have pursued a claim for damages in state court." *Id.*

 Here, the Court agrees, in part, with and partially adopts the Western District's "Erie Guess." The Court agrees that Plaintiff is precluded from pursuing her state law termination claim based on disability discrimination if she did not pursue this claim with the CSC.[9] Plaintiff pleads no facts to establish that she pursued this claim with the CSC. Rather, Plaintiff argues that she was not required to exhaust her claims with the CSC and that the CSC does not have jurisdiction over her state law termination claim. The Court rejects this argument because the CSC has exclusive jurisdiction over termination claims, including termination claims based on disability discrimination. *See Johnson*, 2011 WL 3117862 at *7.

 However, the Court is far more hesitant to adopt the Western District's ruling concerning the jurisdiction of the CSC over general tort damages. Thus, while neither party raises this issue, the Court must additionally determine whether it has jurisdiction over Plaintiff's general tort claims.[10]

This Court's previous holding in *Stevenson* is more in line with the Third Circuit's *McCain* decision rather than the Second Circuit's *Johnson* decision. This Court recognized in *Stevenson* that the CSC has no authority to provide general tort damages and found that it had jurisdiction over the general tort claims under La. R.S. 23:967 for damages regarding "humiliation, embarrassment, loss of reputation, opportunity for advancement/promotion, lost wages and benefits, mental anguish and emotional distress[.]" *Stevenson*, 547

F.Supp.2d at 557. While not specifically citing to *McCain*, the Third Circuit's holding supports this Court's previous decision.

The *McCain* court explained the problem with finding the CSC has exclusive jurisdiction over cases where the remedy sought, general tort damages, cannot be award by the CSC as thus:

> In [*Reimer v. Med. Ctr. of Louisiana at New Orleans*, 688 So.2d 165 (La. App. 4th Cir.1997) ], the fourth circuit concluded that, if any award granted to the plaintiff by the civil service board was inadequate to compensate him for any injury, he could then assert his claim in district court. This reasoning is problematic as any cause of action that could subsequently be brought in district court could possibly prescribe while the defendant waited for the civil service board's resolution of the underlying removal issue. We find no jurisprudential or legislative authority indicating such a plaintiff's cause of action does not exist until the civil service board renders its decision or that prescription is suspended until such time. This can be seen to be especially problematic in instances where a civil service board finds no wrongful discharge. Under such a circumstance, it would appear that the plaintiff would have to first avail himself of his right to appeal the board's determination to the court of appeal. *See* La. Const. art. X, § 12. This process could obviously continue past the applicable prescriptive period for causes of action in tort. Due to this civil service process, an employee

---

9. The Court notes that *Johnson* was decided on a motion for summary judgment. Even so, the Court finds the analysis applicable here because the Western District made its "Erie guess" as a matter of law.

10. "If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action." Fed.R.Civ.P. 12(h)(3). "[L]ack of subject matter jurisdiction may be asserted at any time by the court, sua sponte[.]" 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.2015).

could lose all damages that could not be awarded by a civil service board, *e.g.* general damages, simply because the cause of action had prescribed. We find nothing to suggest that a city employee has any less right to assert entitlement to damages for tortious conduct than one employed by a private employer.

Due to the above-noted complexity, we do not conclude that the civil service board has exclusive jurisdiction to hear those type of cases wherein the remedy sought could not be awarded by the board. In the petition instituting the present matter, the plaintiff sought damages due to loss of sick and vacation leave, health insurance, and retirement benefits. These appear to be the type of remedies that could be awarded to the plaintiff for wrongful termination, even if for discrimination, by the civil service board. Thus, the civil service board would have been the appropriate place to seek recovery for these damages.... However, the civil service board is powerless to award other damages sought by the plaintiff, *e.g.* general damages and loss of business reputation. In this regard, we conclude that the lower court had subject matter jurisdiction over these issues.....

*McCain,* 741 So.2d at 727–28.

The Court shares these concerns. The Western District held that a plaintiff who receives a *favorable* determination on her claim of improper removal, she could pursue that claim in state court. *See Johnson,* 2011 WL 3117862 at *7. However, as explained by the *McCain* court, if a plaintiff receives an *unfavorable* determination, the plaintiff would likely have to appeal that determination to a court of appeal which may cause her tort claims to prescribe. Moreover, this split in the Louisiana Courts of Appeal regarding the jurisdiction of the CSC over general tort claims has not been resolved by the Louisiana Supreme Court.

Thus, given these concerns and this Court's previous holding in *Stevenson,* the Court declines to adopt the Western District's "Erie Guess" as it relates to general tort claims. In accordance with *McCain* and *Stevenson,* the Court finds that it has jurisdiction over Plaintiff's state law general tort claims. Specifically, the Court finds that is has jurisdiction over Plaintiff's state law claims for loss of enjoyment, loss of reputation, lost wages and benefits, and mental anguish and emotional distress because the CSC has no authority to provide for general tort damages. *See Stevenson,* 547 F.Supp.2d at 557.

However, as explained above, the CSC has exclusive jurisdiction over termination claims, including termination claims based on disability discrimination. Accordingly, the Court finds that it lacks jurisdiction over these claims.[11] Defendant's Partial

---

11. The United States Supreme Court has recently recognized that "the word 'jurisdiction' has been used by courts, including [the Supreme Court], to convey 'many, too many, meanings[.]'" *Union P.R. Co. v. Bhd. of Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Cent. Region,* 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009). The Supreme Court has specifically cautioned against "profligate use of the term." *Id.* Accordingly, the Court has carefully considered whether it is appropriate to find that it lacks jurisdiction over Plaintiff's state law termination claims. "Section 12 of Article X [of the Louisiana Constitution] places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the [Civil Service] Commission, with the attendant power to appoint referees to hear and decide cases." *Sumrall,* 728 So.2d at 1259. Further, all three Louisiana District Courts have rendered decisions regarding the CSC in terms of jurisdiction. *See Stevenson,* 547 F.Supp.2d at 557; *LeBeouf v. Manning,* CIV.A. 12–2583, 2015

Motion to Dismiss is granted in this respect, Plaintiff's state law termination claim based on disability discrimination for back pay, reinstatement at the same or similar pay and benefits, or, alternatively, reinstatement with front pay and restoration of full seniority rights and benefits, is dismissed because she did not first pursue this claim with the Civil Service Commission. (Doc. 1–2. p. 17 ¶¶ 30, 31(b)).

## B. Timeliness of Plaintiff's Claim

Next, the Court must determine whether Plaintiff's allegation that on January 18, 2011, "Defendant made arbitrary changes in [her] work duties," (Doc. 1–2, p. 15 ¶ 21.E), is timely.

Defendant argues Plaintiff filed a charge of discrimination on March 2, 2012,[12] and that in order for Plaintiff's change in job duties claim to be timely; it must have been filed within 300 days of the discrete act.[13] (Doc. 4–1, p. 19). Defendant asserts that this means "any discrete act occurring before May 7, 2011, is time-barred." Defendant contends that Plaintiff's change in job duties claim is time-

barred and "not actionable in this litigation" because Plaintiff's "alleged change in job duties occurred on January 18, 2011, before the 300–day period[.]" *Id.*

Plaintiff argues that the January 18, 2011 change of job duties "was the onset of a continuing violation of the ADA by Defendant." (Doc. 10, p. 26). Plaintiff asserts that the Fifth Circuit's "continuing violation doctrine" applies to her claim, and, as such, it is not time barred. Defendant counters this argument by claiming that Plaintiff cannot rely on the "continuing violation" argument in light of *Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002). *Id.*

While each of the parties presented to the Court thorough and well-reasoned briefs addressing the continuing violations doctrine, this Court has recently decided this issue in *Williams v. E.I. du Pont de Nemours and Co.*, CIV.A. 14–382, 2015 WL 4133067 (M.D.La. July 8, 2015). In that case, the parties made substantially similar arguments for and against the continuing violations doctrine. There, this Court first addressed *Morgan*.

---

WL 3650797, at *15 (E.D.La. June 11, 2015) (explaining that "the Court is without jurisdiction" to hear a civil service employee's state-law claims related to her employment because the CSC has exclusive original jurisdiction); *Carmouche v. Marksville Hous. Auth.*, CIV.A. 12–3023, 2013 WL 3049408, at *4 (W.D.La. June 17, 2013) ("The exclusive jurisdiction of the Louisiana Civil Service Commission over wrongful termination claims dictates that a civil service employee must first appeal such claim to the commission before filing suit alleging wrongful termination. Without the exhaustion of administrative remedies, this court lacks jurisdiction to hear any such claim.").

Thus, because the Louisiana Constitution grants jurisdiction to the CSC, and all three Louisiana District Courts have rendered decisions regarding the CSC in terms of jurisdiction, it is appropriate for the Court to find that it lacks jurisdiction over Plaintiff's termination claims.

12. Plaintiff claims in her opposition that she also filed a charge of discrimination on August 27, 2010. (Doc. 10, p. 28). However, there is no claim that Plaintiff amended her August 27, 2010 charge to include the January 18, 2011 change of job duties. Further, Plaintiff pleads that she received a right to sue letter from the EEOC regarding only the March 2, 2012 EEOC charge. (Doc. 1–2, p. 9 ¶ 23). There is no such claim regarding the August 27, 2010 charge, nor any assertion that the EEOC consolidated these charges. Thus, the Court addresses these arguments only in the context of the March 2, 2012 EEOC charge.

13. The Court notes that both parties agree that the 300–day filing period controls here. (Doc. 4–1, p. 19; Doc. 10, p. 26). However, neither party addresses why the 300–day filing period is applicable rather than the 180–day filing period. Even so, regardless of which time period applies, the result would be the same.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court explained:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113, 122 S.Ct. 2061. The Supreme Court further explained that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice. [An employee] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

*Id.* at 114, 122 S.Ct. 2061.

Next, this Court explained that "while it is true that the Fifth Circuit has continued to apply the continuing violations doctrine post-*Morgan,* the Fifth Circuit has held that *Morgan* has limited the doctrine's applicability." *Williams,* 2015 WL 4133067, at *11.

First, the Fifth Circuit has explained the continuing violations doctrine this way:

> [The Fifth Circuit] has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir.2003); *see also Huckabay v. Moore,* 142 F.3d 233, 238–39 (5th Cir. 1998). Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Felton v. Polles,* 315 F.3d 470, 487 (5th Cir.2002) (*citing Messer v. Meno,* 130 F.3d 130, 135 (5th Cir.1997)). The end goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir.2001); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir.1999).

*Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 (5th Cir.2004).

The Fifth Circuit then explained how *Morgan* has limited the doctrine:

> The Supreme Court recently clarified the limits of the continuing violations doctrine. In *Nat.'l R.R. Passenger Corp. v. Morgan,* the Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges. 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, each discriminatory act starts a new clock for filing charges alleging that act. *Id.* In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment. Noting that repeated conduct constitutes a part of the nature of hostile environment claims, the Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." *Id.* Therefore, *Morgan* makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period.

*Id.* at 279–80 (5th Cir.2004).

■ Here, the Court must determine whether a change in job duties constitutes a discrete discriminatory act. After a review of Fifth Circuit case law, the inquiry of whether a change in job duties is a discrete act has not squarely been addressed in this Circuit. However, the Court finds guidance from the Second Circuit case *Liberty Central School District,*

115 Fed.Appx. 489, 490–91 (2nd Cir.2004). In that case, pertinently, the plaintiff claimed that a change in job responsibilities was part of a continuing violation. The Second Circuit rejected that argument and explained that "the untimely [event] that [plaintiff] alleges, a change in job responsibilities ... [is] [a] 'discrete discriminatory [act]' that do[es] not constitute a continuing violation." *MacDonnell v. Liberty Cent. Sch. Dist.,* 115 Fed.Appx. 489, 491 (2d Cir.2004) (citing *Morgan,* 536 U.S. at 113–114, 122 S.Ct. 2061; *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134 (2d Cir.2003)).

The Court agrees that a change in job duties is a discrete discriminatory act. Plaintiff's charge was filed on March 2, 2012. Any act prior to May 7, 2011 falls outside of the 300–day time period. Plaintiff's alleges that her change of job duties occurred on January 18, 2011. Therefore, as Plaintiff's claim does not fall within the 300 day filing period, it must be dismissed.[14] Even so, Plaintiffs change in job duties allegation may be used as evidence in support of her timely claims because Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061. Accordingly, as Plaintiffs change in job duties claim is not timely, Defendant's Motion for

14. The Court notes that it is well-established that the "mere 'loss in some job responsibilities' does not constitute an adverse employment action and that " 'a mere inconvenience or an alteration of job responsibilities' will not suffice." *Thompson v. City of Waco, Texas,* 764 F.3d 500, 504 (5th Cir.2014) (citations omitted). However, the Fifth Circuit has also recognized that, "[i]n certain instances, a change in or loss of job responsibilities ... may be so significant and material that it rises to the level of an adverse employment action." *Id.* at 504–05 (citations omitted) (holding that plaintiff successfully alleged adverse action when the facts as alleged "plausibly suggest[ed] that ... [the employer] rewrote and restricted [plaintiff's] job description to such an extent that he no longer occupie[d] the position of a detective" but was rather "an assistant to other detectives"). The Court has reviewed the Plaintiff's Complaint and finds that it is doubtful that Plaintiff sufficiently alleged such a significant and material change in job duties. However, the Court need not make this determination (particularly given the fact that Defendant failed to raise the issue). Even if Plaintiff had sufficiently stated a claim, or, alternatively, even if Plaintiff had amended her complaint to make such a showing, the Court finds that any such supposed adverse employment action would remain time-barred.

Partial Dismissal is granted in this respect.

## C. Stay

Here, the Court must determine whether to stay these proceedings as Defendant has requested. As explained above, the Court has dismissed Plaintiff's state law termination claim.

Defendant has argued that the Court should stay the proceedings pending the resolution of the CSC decision. (Doc. 4–1, P. 15). Defendant suggests that the court should stay the proceedings in consideration of the economy of its time and effort, and also for the counsel and litigants. (Doc. 4–1, P. 16). Further, Defendant argues that if the CSC finds in Plaintiff's favor would substantially narrow the scope of her claim, the scope of relief, and related issues. (Doc. 4–1, P. 17). Finally, Defendant also asserts that unless required to do so now, Plaintiff might also prosecute her claims before the CSC at some other time, as a strategic matter, if she dislikes the Court's treatment of her suit. (Doc. 4–1, P. 17).

Plaintiff's argument against a stay is limited to its argument that the she does not have to exhaust her LEDL claim, thus her "claims under the LEDL should not be dismissed of stayed pending Civil Service consideration."

Here, the Court declines to stay these proceedings. The Court, as explained above, dismissed Plaintiff's state law termination claim. While Plaintiff may attempt to pursue her state law claim in the proper forum, the CSC, the Court declines to speculate as to whether Plaintiff will actually attempt to do so. Further, because this claim was dismissed, it is not necessary to stay these proceedings. Thus, Defendant's request for a stay is denied.

## V. Conclusion

Accordingly, **IT IS ORDERED** that Motion for Partial Dismissal is **GRANTED IN PART** and **DENIED IN PART;**

Defendant's motion is **GRANTED** in that Plaintiff's state law termination claim is dismissed. The Court lacks jurisdiction over Plaintiff's state law termination claim based on disability discrimination for back pay, reinstatement at the same or similar pay and benefits, or, alternatively, reinstatement with front pay and restoration of full seniority rights and benefits, because she did not first pursue this claim with the Civil Service Commission;

Defendant's motion is **GRANTED** in that Plaintiff's change in job duties claim is dismissed. Plaintiff's change in change in job duties claim is a discrete discriminatory act that is time-barred because it occurred more than 300–day prior to her EEOC charge.

Defendant's motion is **DENIED WITHOUT PREJUDICE** in that Defendant's *res judicata* argument is premature at the dismissal stage. Defendant may re-urge *res judicata* at a later stage of these proceedings.

In all other respects, Defendant's motion is **DENIED.**